**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BRIAN K.,[1]** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:21-CV-287** |
| | ) | |
| **KILOLO KIJAKAZI[2], Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Brian K. ("Brian") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Brian alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider the functional impact of his physical impairments; failing to properly assess the opinion of the consultative physician; failing to properly assess and accommodate his mental impairments; and failing to properly consider his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Brian's Motion for Summary Judgment (Dkt. 15) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Brian is not disabled under the Act.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Brian filed for DIB on February 20, 2018, claiming that his disability began on October 15, 2016. R. 15.  Brian's date last insured was June 30, 2024; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 999. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Brian's claims were denied by the Commissioner at the initial and reconsideration level of administrative review. R. 96–141.

On June 15, 2020, ALJ Marc Silverman held an administrative hearing to consider Brian's claims. R. 43–80. Counsel represented Brian at the hearing, which included testimony from vocational expert Katherine Young. Id. On September 23, 2020, the ALJ entered a decision

analyzing Brian's claims under the familiar five-step process[3] and denying his request for benefits. R. 15–34.

The ALJ determined that Brian was insured at the time of the alleged disability and that he suffered from the severe impairments of status post traumatic brain injury (TBI) in July 2011; unspecified neurocognitive disorder; disorders of the back; major depressive disorder; anxiety disorder; attention deficit disorder; and obsessive-compulsive disorder. R. 10. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21. The ALJ concluded that Brian retained the residual functional capacity ("RFC") to perform a range of light work. R. 23. Specifically, the ALJ found that Brian can occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; can perform simple, routine tasks; can make simple work-related decisions; can have no more than occasional interaction with supervisors, co-workers, and the general public; and low stress work, which is defined as routine work with no more than occasional changes in the work. Id.

The ALJ determined that Brian could not perform his past relevant work of phlebotomist, sales representative of chemicals and drugs, probation and parole officer. R. 32. However, the ALJ found that Brian could perform jobs that exist in significant numbers in the national economy, such as bench assembler, hand packager, and cleaner/housekeeper. R. 33. Thus, the

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

ALJ concluded that Brian was not disabled. Id. Brian appealed the ALJ's decision and on March 15, 2021, the Appeals Council denied his request for review. R. 1–5.  This appeal followed.

## ANALYSIS

### 1.  Medical History[4]

Brian is obese and has a history of treatment for obsessive-compulsive disorder ("OCD") and attention deficit disorder ("ADD"). Brian sustained a traumatic brain injury and fractured his thoracic spine at T6 during an ATV accident in July 2011. R. 403–04.  Brian was hospitalized for approximately one month and discharged to outpatient therapy. R. 406, 408.

Brian alleges that he became disabled five years after his accident, in October 2016. Brian visited his family care provider Gregory Stidham, M.D., in October 2016, complaining of neck and back pain, at a pain level of 2 out of 10 with medication, and 8 without medication. R. 960. Brian related that his pain was stable, but affected his ability to work and play with his children. R. 961.  Dr. Stidham assessed ADD, OCD, and chronic pain, all of which were stable with medication. R. 963.

Brian followed up with Dr. Stidham in June 2017, and reported chronic pain in his back, legs, feet and arms. R. 1108. Brian reported his pain was at level 3 of 10 with medication, and 8 without medication. R. 1109.  His physical examination was normal, aside from mid and low back tenderness, and decreased range of motion with full extension and lateral rotation of the back. R. 1111.  Dr. Stidham found that Brian's pain symptoms over the last 6 months were stable; his level of functioning was stable; and his affect was stable. Id.  He continued Brian's medications of Adderall, Norco and Xanax.

---

[4] Brian's medical records reflect other medical issues that are not at issue in this appeal, including underactive thyroid, sleep disorder, hypertension, hypercholesterolemia, history of Merkel cell lymphoma in his arm, left knee pain, right hand and carpometacarpal joint pain, and headaches. My review of Brian's medical history is limited to the pertinent physical and mental health conditions.

Brian was referred to Marvin A. Gardner, Ph.D., for a psychological examination on June 15, 2017, and complained of mental difficulties following his traumatic brain injury in 2011. Dr. Gardner diagnosed mild cognitive impairment and recommended counseling for anxiety. R. 1284–85.

Brian saw Daniel Jones, M.D., at his family practitioner's office on October 4, 2017, and reported that his pain was well controlled with Norco, and that Adderall helped his thought processes. R. 1099.  Dr. Jones found that Brian's chronic back pain and ADD were stable. R. 1101.

Brian followed up with Dr. Stidham in January 2018, and reported that he was doing reasonably well with his medications and is functioning as a father and husband "without too much difficulty." R. 1093. He reported tolerating hydrocodone well with fairly good pain control. He complained of weight gain and fatigue. Id. Brian's physical exam was normal and he presented as moderately anxious. R. 1095.  In May 2018, Dr. Stidham noted that Brian's OCD and ADD were relatively stable, and continued his medications of Adderall, Xanax and Prozac. R. 1298. Brian was functioning reasonably well and was "able to keep his job going and care for the family at this point." R. 1299.  Brian's physical exam was normal, his affect was somewhat flattened, his attention was easily diverted, and his judgment and reasoning were intact. R. 1031.

In September 2018, Brian reported moderate anxiety and OCD with personality changes but he was functional and able to hold down his job. R. 1447.  Brian reported that his pain was reasonably well controlled and he was tolerating his medications. The combination of Adderall, Prozac and Trazodone help his anxiety and help him sleep.  Brian reported that he had good results from hydrocodone and over the counter non-steroidal anti-inflammatory drugs for his chronic back pain. Id. Brian's physical examination was normal, and he had a somewhat

flattened affect, was easily distracted and sometimes tangential. His cognition was grossly intact and his judgment was fair. R. 1449.

Brian's wife filed a petition for an emergency commitment order in October 2018, and Brian was screened by Blue Ridge Behavioral Health. R. 1648.  Brian admitted sending suicidal texts to his wife so she would feel sorry for him. R. 1651.  Brian did not meet the criteria for a temporary detention order. R. 1659.

Brian saw nurse practitioner Courtney Rogers in October 2018, and reported that his OCD is becoming progressively worse, he was having serious trouble in his marriage with his disease causing him to constantly call and text his wife when she asked to be left alone. R. 1502. He was seeing a counselor who specializes in brain injuries and recommended switching his medication from Prozac to Effexor. Id. Brian's physical exam was normal, and he presented as tearful and very expressive. R. 1504. Ms. Rogers diagnosed mixed obsessional thoughts and acts, switched Brian's Prozac prescription to Effexor, and recommended close follow-up with a counselor. R.1501.

In November 2018, Brian had a consultation with physiatrist Richard Weiss, M.D. R. 1494.  Brian reported his biggest problem was a pessimistic outlook on life, he has road rage, gets angry easily, has constant mood swings and memory deficits.  He reported pain in his back and left knee, and that he was separated from his wife and living with his parents. R. 1495.  Dr. Weiss ordered an MRI of Brian's thoracic spine, which showed healed mild T5 and T6 compression deformities, and small T4-5 and T5-6 protrusions. R. 1499. Dr. Weiss increased Brian's Effexor dose given his OCD symptoms and recommended cognitive behavioral therapy. R. 1500–01.

6

In December 2018, Brian saw nurse practitioner Susan Goode, and stated that Adderall helps with focus, increased Effexor greatly reduced his impulsivity and increased his ability to control behaviors. R. 1489. Brian reported seeing Dr. Gardner, that he reduced his dose of Norco, that his back pain was manageable, and that he could work and do routine activities of daily living. Id. He had no problems with drowsiness, and a normal physical examination. Mentally, he was difficult to interrupt and overly focused on his injury and how it affects his life. R. 1491.

Brian was evaluated by The Center for Emotional Care in January 2019. R. 1677. Brian reported that he was separated from his wife and she has a protective order against him. Brian reported feeling less depressed since taking Effexor and that he slept well. He complained of pressured speech, engaging in destructive behavior, and difficulty sustaining attention. Id. Brian's mental status examination revealed limited attention and concentration. R. 1678.  He was diagnosed with separation anxiety disorder, major depressive disorder, and rule out bipolar disorder. R. 1679.

On January 22, 2019, Brian was evaluated by Ella Pecsok, Ph.D., with Psychological Health Roanoke. R. 1926.  Dr. Pecsok's impression was that Brian presents with persistent deficits concerning social, emotional and memory that are consistent with the residual effects of his head trauma, and are likely to hinder his ability to meet expected goals at home and in the workplace.  Brian also presented with problematic interpersonal behaviors where he perceived an excessive degree of potential harm and risk.  Dr. Pecsok found that Brian would benefit from treatment with a specialist in head trauma and medication used for traumatic brain injury. Id.

Brian followed up with Dr. Patel in February 2019, and reported that Effexor helped quite a bit, and he was seeing a therapist weekly. R. 1668. Brian was working as a wheelchair driver

with the rescue squad. Brian presented with an anxious mood, appropriate affect, partial insight and judgment, and limited attention and concentration. Id. Dr. Patel recommended increasing his Effexor dose. R. 1669.

Brian followed up with Dr. Pecsok in March 2019, and his affect shifted radically depending upon the topic being discussed. He had repetitive discourse and "a near abscessed focus upon his wife," and reported being bored at home. R. 1886.

On March 13, 2019, Brian visited his family doctor and complained of back pain, and stated that Norco does not resolve all his pain but helps him to function. R. 1716.  He requested a prescription for Voltaren gel.  Brian reported doing cardio on an elliptical to keep in shape. Upon examination, Brian had tenderness over the bilateral rhomboid and trapezius muscles, and his mood and affect appeared depressed with some tearfulness. R. 1717.

Brian followed up with Dr. Pecsok in May and reported that his condition deteriorated after he was required to leave his house and he continued obsessively texting his wife. R. 1889. He reported being let go from his last job due to impulsive reactions toward another co-worker, and having a potential job in Breckenridge County for the summer of 2019. R. 1887.  In June, Brian presented with obsessive thoughts and behaviors, and was easily sidetracked. R. 1891–92.

Brian was incarcerated for violating a protective order regarding his wife, and had an initial behavioral health intake at Western Virginia Regional Jail on August 9, 2019.  His mental status examination was normal, aside from poor insight and judgment. R. 1875.

Brian complained of increased mid-back pain after a motor vehicle accident in September 2019. R. 1684.  Brian followed up with Dr. Pecsok in October, November and December 2019. He was "quite distraught" in November, with emotional lability and episodes of tearfulness, and Dr. Pecsok recommended additional medication. R. 1896–98.  In February 2020, Brian was

released from jail after being incarcerated for over a month for failure to appear in court and violating a restraining order. R. 1899. He was continuing to look for a job.  He was "highly distraught," concerning the dissolution of his marriage and separation from his children. The only medication Brian was given while incarcerated was Effexor. Id.  Dr. Pecsok wrote a letter to attorney Joseph Vannoy, noting that Brian's course has been complicated by ongoing stressors of failure to establish employment, loss of his marriage and contact with his children, and loss of his home. R. 1883. She stated that Brian continued with persistent deficits concerning emotional regulation, decision-making, impulse control, awareness of time, organization, and planning skills. She noted that he also had positive prognostic factors, including a supporting and well-functioning family of origin, preserved pro-social personality and character traits, and preservation of basic social skills. Id.

In February 2020, Brian reported working in car sales seven days a week, and his pain was worse from having to walk a lot at work. R. 1902.  He has been using Xanax less because his stress was better managed, and has been walking more at work and home. Id. Brian's physical examination was normal, other than tenderness to palpation of his upper thoracic vertebra. R. 1904.

Brian continued to follow up with Dr. Pecsok in March and April 2020, and was tearful, and "harnessing" the urges to contact his ex-wife. R. 2005–07.  On March 31, 2020, Brian saw Dr. Patel and reported that he was working full-time as a security guard at a hospital in Christiansburg.  He reported his mood as stable with the help of Luvox for his OCD.  His mental status was normal with fair insight and judgment and good attention and concentration. R. 1986. Dr. Patel continued his medications. R. 1987.

On May 27, 2020, Brian reported to his family doctor that he had better pain control with Norco, that Adderall worked well for attention at work allowing him to focus, and that he took medication as needed to control anxiety. R. 1970.

Brian worked during the period of alleged disability as a security officer, a weigh scale agent, and a car salesman.  Brian worked as a car salesman from August to December 2019 and alleged that he had special accommodations. R. 58–59.  Brian also testified that he worked as a weigh-scale agent in part of 2019 and 2020. R. 63. Brian's wages for 2019 were over the substantial gainful activity threshold. During the administrative hearing, Brian testified that he had been working part-time as a security officer since February or March 2020.[5] R. 52.

### 2.  **Physician Opinions**

Brian was referred to Roger DeLapp, Ph.D., for a consultative examination on June 5, 2017. When asked why he was applying for disability, Brian said he had motor problems with his hands, causing him to drop things; that he stumbles when he walks; he lost his sense of smell; he has ADHD and anger issues. R. 1039.  Brian reported having ADHD as a child that was diagnosed in his 30s.  He was diagnosed with OCD in his 20s, which is helped by Prozac. Id. Dr. DeLapp performed a mental status examination, and determined that Brian's results are consistent with major depressive disorder, ADD, OCD, and unspecific neurocognitive disorder, meaning there is a clear weakness in working memory and a likely weakness in processing speed secondary to his traumatic brain injury. R. 1041.

Dr. DeLapp noted that Brian has a college degree in criminal justice, and a history of working as a probation officer, manager, and home sales representative. Regarding Brian's capacity to work, Dr. DeLapp stated:

---

[5] The specific dates of Brian's various employment periods are not clear in the record.

10

> Currently he would have problems with regular attendance at work because of
> depression and anxiety. He would have trouble working on a consistent basis
> because of his trouble with attention and concentration, his weaknesses in work
> [sic] his memory and possible weaknesses in processing speed. Since his
> traumatic brain injury, he has been prone to mistakes and probably required some
> special supervision. He could not complete a normal work day or work week
> without the above named interruptions. He does not have a history of problems
> with supervisors, coworkers or the public other than his claims that he has been a
> whistle-blower at his place of employment. He would currently have some
> trouble negotiating the competitive stress of the work place.

R. 1041–42.

On July 25, 2018, state agency physician Nicholas Tulou, M.D., reviewed Brian's records

and determined that he could perform a range of light work with frequent climbing ramps/stairs,

balancing, kneeling, stooping, crouching and crawling; and occasional climbing

ladders/ropes/scaffolds. R. 89. Dr. Tulou found that Brian could complete a normal workday in

a light capacity and his physical impairments would not distract or keep him from completing

light work on a regular and sustained basis. R. 90.

The same date, Leslie Montgomery, Ph.D., reviewed Brian's mental health records and

determined that his traumatic brain injury, anxiety and OCD were severe impairments. R. 87.

Dr. Montgomery found that Brian had moderate limitations in the domains of concentration,

persistence, or maintaining pace, and interacting with others. R. 91. Dr. Montgomery

determined that Brian was not limited in his ability to complete a normal workday and work

week, perform at a consistent pace without an unreasonable number and length of rest periods,

perform activities within a schedule, maintain regular attendance and be punctual. Id. She found

that Brian was moderately limited in his ability to carry out detailed instructions, maintain

attention and concentration for extended periods, sustain an ordinary routine without special

supervision, interact with the general public, accept instructions, and respond to criticism from

supervisors. Dr. Montgomery determined that Brian could perform 1–3 step commands and

11

more detailed commands when given adequate instructions, he can work around co-workers and

supervisors, but should limit his contact with the general public. R. 92.

On February 14, 2019, state agency physician Jack Hutcheson, M.D., reviewed Brian's

records and determined that he could perform a range of light work with occasional postural

limitations.  R. 108.  On the same date, state agency psychologist Joseph Leizer, Ph.D., reviewed

Brian's mental health treatment records and determined that he could understand and remember

tasks with 1–2 step instructions, could maintain concentration, persistence and pace on tasks with

1–2 step instructions that require only occasional interaction with others, and can interact with

coworkers, supervisors and the general public on an occasional basis. R. 109–11.

### 3.  Function-by-Function

Brian argues that the ALJ did not make specific findings, as required by SSR 98-6p,

regarding whether his impairments would limit his ability to sit, walk, stand, lie down during the

day, or have an unacceptable number of absences from work. Pl. Br. Summ. J. p. 24.  Brian

argues that the ALJ did not conduct a function-by-function analysis and failed to assess his

ability to sustain work activities on a regular basis for an 8-hour day. Id.  Brian does not point to

any evidence in support of his claims; rather, he simply disagrees with the ALJ's determination.

The ALJ is required to develop an adequate RFC that accounts for the work activities the

claimant can perform given the physical or mental impairments affecting his ability to work.

Importantly, the ALJ must explain the conclusions reached and explain any record evidence

which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2,

1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting

his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary

work setting on a regular and continuing basis, describe the maximum amount of each work-

related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Brian's physical impairments and provided the necessary medical and non-medical facts and evidence to support his conclusions.  Contrary to Brian's assertion, the RFC delineates his ability to sit, walk, stand, and whether he requires any absences from work. R. 23.  The ALJ considered Brian's testimony that he has chronic whole body pain; that he can sit and stand for up to five minutes; and that he needs to lay down most of the day. R. 24. The ALJ reviewed and summarized Brian's medical evidence in detail. R. 24–29.  The ALJ reviewed the medical opinions of Drs. Tulou and Hutcheson that Brian could perform a range of light work with occasional postural limitations, and found their opinions persuasive. R. 30. The ALJ did not adopt Dr. Hutcheson's limitation of occasional balancing, finding that it is not supported by the record which has no abnormal findings of imbalance. The ALJ also imposed an additional limitation precluding vertical

climbing as a safety precaution. The ALJ noted that he provided frequent balancing and

occasional postural restrictions to accommodate Brian's loss of function and avoid aggravating

his symptoms. R. 31.

Having reviewed the record, the ALJ explained his findings, noting that Brian's MRI

results prior to the alleged disability date provide an objective basis for his back disorder, which

is corroborated by palpable tenderness on few examinations. The ALJ noted that Brian could

work despite this impairment before his alleged onset date and the record does not reflect

deterioration after that date. R. 31. The ALJ found that Brian's use of narcotic pain medication

underscores the intensity of his pain; but his treatment has otherwise been limited to outpatient

family care, which suggests less intense and persistent symptoms that are managed with

conservative and routine treatment. Id. The ALJ noted that Brian's examinations show one

instance of nonspecific motion deficits and do not clinically support limitations beyond light

exertion for lifting, carrying, standing, and walking. The ALJ noted evidence of Brian tolerating

activity with greater than basic demands, such as his substantial work during the relevant period

and exercising. The ALJ further explained:

> Considering this evidence with the record as a whole in favor of the claimant
> supports precluding vertical climbing as a safety precaution against injury as well
> as frequently balancing and occasional postural activities otherwise to
> accommodate the loss of function and minimize aggravated symptoms, if any.
> The treatment record does not include subjective complaints, clinical findings, or
> medical recommendations to support testimony of tolerating no more than five
> minutes of sitting or standing. Similarly, the treatment record does not include
> subjective complaints, clinical findings, or medical recommendations to support
> testimony of laying down most of the day and effectively precluding sustained
> demands on a regular and continuing basis. Based on this evidence and the record
> as a whole, I find that the claimant is restricted to light exertion except: climb
> ramps and stairs occasionally; never climb ladders, ropes, and scaffolds; balance
> frequently; and stoop, kneel, crouch, and crawl occasionally.

R. 31.

Thus, the ALJ specifically considered Brian's allegations that he is unable to sit and stand for more than five minutes at a time and needs to lay down during the day.  The ALJ found these allegations unsupported by the record, provided a narrative explanation for that finding, and provided a detailed RFC that set forth Brian's limitations as to each area of physical functioning. The RFC is, by definition, a determination of what Brian can perform on a "regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2.

The ALJ provided a detailed summary of Brian's physical impairments, medical records, testimony and opinion evidence. The ALJ discussed Brian's symptoms, his resulting limitations, the medical evidence, medical opinions, Brian's testimony, his credibility and conflicting medical evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Brian's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination.  Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

4.  **Mental Impairments**

Brian asserts that the ALJ failed to properly account for his mental impairments by only addressing the skill level of work and by failing to address his ability to sustain work over an 8-hour workday. Pl. Br. Summ. J. p. 27. Brian asserts that the ALJ did not explain how his moderate impairment with concentration, persistence and maintaining pace is accommodated by

15

the RFC.  Brian also alleges that the ALJ's RFC does not properly accommodate his moderate

impairment with interacting with others.

Brian also argues that the ALJ erred by finding the consultative psychological opinion of

Roger DeLapp, Ph.D., to be unpersuasive. Pl. Br. Summ. J. p. 32. Brian asserts that the ALJ's

determination that he engaged in substantial gainful activity is not supported by substantial

evidence, and cannot provide support for the ALJ's decision to find Dr. DeLapp's opinion

unpersuasive. Id. at 34.

In step three of the decision, the ALJ determined that Brian had moderate impairments

with the domains of understanding, remembering or applying information; interacting with

others; concentration, persisting or maintaining pace; and adapting or managing oneself. R. 22.

Specifically, regarding concentration, persisting or maintaining pace, the ALJ noted:

> He testified to problems with attention, concentration, and loss of focus.  He occasionally
> complained of difficulty concentrating during treatment but reported intermittent
> improvement with use of longstanding medication as prescribed.  Examinations
> occasionally showed related clinical deficits. He was capable of activities with basic or
> increased demands such as driving and substantial work activity.

R. 22.  When considering Brian's ability to interact with others, the ALJ stated:

> He testified others thing [sic] he gets angry and upset.  He has difficulty working
> with other people (Testimony).  He more frequently reported difficulty controlling
> the urge to contact or interact [with] his ex-wife during their separation and after
> their divorce.  He also reported difficulty living with his parents.  However, he
> had contact and interactions with his children, he had substantial work in several
> occupations with increased public or social demands, and he had generally
> unremarkable interactions with multiple sources.  At the hearing, the claimant was
> cooperative and exhibited appropriate social skills.

R. 22.

In step four of the decision, the ALJ reviewed Brian's subjective testimony and treatment

records. R. 24–29. The ALJ noted Brian's testimony that he is depressed, has difficulty staying

positive, cries at times, thinks about suicide, loses track of time and forgets things, has no issues

16

with his temper but others have told him he gets angry and upset, has difficulty working with other people, has problems with attention, concentration and loss of focus, has mood swings, and lacks motivation. R. 24.  The ALJ found that Brian's impairments could be expected to cause his alleged symptoms but that his statements of intensity, persistence and limiting effects are not entirely consistent with the record. Id.

The ALJ reviewed Brian's mental health records in detail. He reviewed Dr. DeLapp's opinion that Brian would have problems with regular attendance at work, working on a consistent basis, would require some special supervision, and was unable to complete a normal workday or workweek without interruption. R. 30. The ALJ found Dr. DeLapp's limitations regarding regular attendance, consistent work, and completing a workday or workweek unpersuasive, finding that they overestimated the severity of Brian's limitations. The ALJ found those limitations inconsistent with 1) Brian's limited treatment through 2018; 2) evidence of intermittent improvement with medication and few escalations requiring more aggressive treatment thereafter; 3) examinations most frequently showing unremarkable findings with few correlating clinical deficits; and 4) Brian's capacity for activity with greater demands, including substantial work during the relevant period.  The ALJ found Dr. DeLapp's remaining limitations generally persuasive because they are consistent with and supported by the record.

The ALJ reviewed the opinions of Drs. Leizer and Montgomery that Brian could perform simple, repetitive tasks with one-to-two step instructions, with only occasional interaction with others and limited contact with the general public. Id.  The ALJ found both opinions persuasive because they are consistent with and supported by Brian's limited treatment through 2018, his intermittent improvement with medication, unremarkable findings on examination and his capacity for activity including driving and substantial work.

17

The ALJ provided a narrative explanation regarding his consideration of the evidence and how he arrived at the RFC, finding that Brian's testimony of mental limitations that preclude all work are inconsistent with and unsupported by the record. R. 31.  The ALJ found that the record contained minimal correlating clinical deficits during the period. The ALJ also noted that Brian's alleged disabling symptoms would not have allowed him to perform the work activity during the period of disability for which he had substantial earnings.  The ALJ noted that Brian's mental health treatment was limited to outpatient visits for over two years after his onset date, and that Brian symptoms were managed with medication. The ALJ explained that "[b]alancing this evidence with one ER visit for suicidal ideation during that period suggests less intense and persistent symptoms managed with more conservative and routine treatment." R. 31.

The ALJ noted that standardized testing showed that Brian had some limitation of working memory deficits and potential processing speed deficits once.  Otherwise, Brian's examinations occasionally showed changes in his mood or affect with tearfulness; being a poor historian once; moderately impaired attention and concentration once; easily diverted attention once; and tangential but redirectable thoughts with deficits on delayed recall testing once. The ALJ determined that these clinical findings did not support Brian's testimony that he is unable to tolerate a basic range of mental demands. R. 31–32.  The ALJ noted that the medical evidence of record showed Brian with improving symptoms with medication and that he continued to receive only outpatient treatment in addition to his recent period of incarceration.

Regarding social interaction, the ALJ noted that Brian's examinations occasionally showed obsessive thoughts and behavior focused on his ex-wife, tearfulness, mood lability, and being easily side-tracked. The ALJ found this consistent with Brian's capacity for substantial work and driving during his alleged disability period.  The ALJ noted that Brian's complaints of

18

paranoia were isolated and not pervasive enough to preclude basic social demands of work. The ALJ noted that Brian was cooperative and exhibited appropriate social skills during the hearing, answered all of his questions, and did not display difficulty with attention, concentration and memory. The ALJ expressly stated that he considered his observations of Brian as one of many factors in his determination. Based on all of the evidence, the ALJ concluded that Brian can perform simple, routine tasks; can make simple work-related decisions; can have no more than occasional interaction with supervisors, co-workers, and the general public; and can perform low stress work, defined as routine work with no more than occasional changes. R. 32.

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176

(emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Brian's assertion that the ALJ did not explain how the RFC findings address or accommodate his moderate limitations with concentration, persistence or pace, or interacting with others is unfounded. The ALJ provided a lengthy narrative discussion of Brian's allegations, treatment records and opinion evidence regarding his mental health limitations. The ALJ considered Brian's allegations of difficulty being around people and with concentration, persistence and pace at length in both steps three and four of his opinion. The ALJ discussed Brian's ability to concentrate and focus, and his ability to work around others. The ALJ explained how his RFC is supported by Brian's mental health treatment records, his daily activities and ability to perform substantial work activity during the period of disability, and the opinions of the reviewing physicians in the record. The ALJ considered Brian's mental health treatment and complaints at length, and carefully analyzed each facet of his mental impairments.

20

Brian asserts that the ALJ improperly discounted Dr. DeLapp's conclusions because: 1) the ALJ erroneously asserted that Brian has "limited treatment through 2018;" 2) Brian's intermittent improvement with medication does not undermine Dr. DeLapp's conclusions; and 3) Brian did not engage in substantial gainful activity during the disability period because he received special accommodations and was not fully performing the duties required. Pl. Br. Summ. J. pp. 32–36.

The ALJ considered Dr. DeLapp's opinion in detail, and explained at length why he found certain portions of the opinion unpersuasive. The ALJ considered the factors required by the regulations[6] and provided reasoning for finding Dr. DeLapp's conclusions regarding Brian's inability to perform regular attendance, consistent work and complete a workday or workweek unpersuasive. The ALJ's explanation established the required logical bridge from the evidence to his conclusion. R. 30.  Brian's disagreement with the ALJ's characterization of his mental health treatment as "limited" does not deprive the ALJ's conclusion of substantial evidence.

Brian's argument that the ALJ erred by considering his substantial work activity is also unpersuasive.  In step one of the opinion, the ALJ determined that Brian engaged in substantial gainful activity from January to March 2019; July to December 2019; and April to June 2020. R. 18.  However, the ALJ further found that there was a continuous 12-month period during which Brian did not engage in substantial gainful activity, and thus continued with the five-step

---

[6] The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the most important factors considered are supportability and consistency. Id.  The ALJ is not required to explain the consideration of the three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

determination regarding disability. Id. Brian argues that the ALJ erred by finding those periods

of work activity to be substantial and gainful because he was given accommodations by his

employers.  He therefore argues that the ALJ erred by using his work activity as a reason to

discount Dr. DeLapp's opinion.

First, any error by the ALJ in classifying Brian's work activity as "substantial gainful

activity," in step one is harmless because the ALJ found that Brian had a continuous twelve-

month period(s) during which he did not engage in substantial gainful activity; and thus, the ALJ

proceeded through the five-step analysis. See Penick v. Astrue, No. 3:08cv549, 2009 WL

3055446, at *4 (E.D. Va. Sept. 23, 2009) ("[E]ven if the ALJ erred in classifying Plaintiff's, self-

proclaimed, full-time work at DRS Group of Virginia as substantial gainful activity, the error is

harmless, as the ALJ's consideration of the activity, when considered in conjunction with the

ALJ's review of the entire Record, would have been proper.")

Second, it was appropriate for the ALJ to consider Brian's work activity during the

alleged disability period as evidence of Brian's functional capacity. Hancock v. Kijakazi, No.

1:20cv46, 2021 WL 3507864, at *13 (W.D. Va. Aug. 10, 2021) (citing 20 C.F.R. § 416.971)

("[T]he ALJ will consider all of a claimant's work activity during the period relevant to an

individual's disability claim to determine whether he has the ability to perform

substantial gainful activity."); see 20 C.F.R. § 404.1529(c) (directing ALJs, when evaluating

intensity, persistence, and limiting effects of claimant's symptoms, to assess, inter alia, objective

medical evidence, medical opinions, daily activities, medication, and treatment other than

medication).  Indeed, the ALJ was obligated to consider Brian's past relevant work and whether

he performed any substantial gainful activity during the relevant period.

Further, in explaining his consideration of Dr. DeLapp's opinion, the ALJ stated that the record contains evidence of Brian's "capacity for activity with greater demands including substantial work during the relevant period." R. 30.  This is an appropriate consideration by the ALJ and is supported by substantial evidence in the record, such as Brian's reports to his treatment providers of working full time and his earnings during the alleged period of disability. The ALJ considered Dr. DeLapp's opinion, together with the evidence in the record, and provided a reasonable explanation as to the weight he gave the opinion. Accordingly, I find that substantial evidence supports the ALJ's evaluation of Dr. DeLapp's opinion.

Brian also asserts that the ALJ failed to specifically address his ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 27.   However, the ALJ found the opinions of Drs. Montgomery and Leizer persuasive, both of whom concluded that Brian could perform sustained work activities for an eight-hour day. R. 30.  The ALJ further specifically found that Dr. DeLapp's opinion that Brian would have difficulty working on a consistent basis for a normal workday was unpersuasive, noting that it overestimates the severity of Brian's limitations.  The ALJ found such a restriction inconsistent with Brian's mental health treatment and evidence of his ability to perform substantial work. R. 30.  The ALJ noted that Brian's mental health records reflected minimal issues with attention and concentration that did not preclude tolerance of basic work with basic mental demands. R. 31–32.  Accordingly, the ALJ addressed Brian's ability to sustain work for an eight-hour workday.  Notably, Brian does not point to any evidence reflecting difficulty with persistence or pace that the ALJ failed to consider, nor do his mental health records reflect concerns with his ability to sustain work.

Thus, unlike in <u>Mascio</u>, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon Brian's testimony, his treatment records, and the opinions of the

reviewing and consulting physicians to find that despite Brian's moderate mental health

impairments, he could perform a limited RFC. The ALJ reviewed Brian's record evidence in

detail, and explained how the RFC accommodated each of Brian's mental health limitations in

the analysis. Thus, the ALJ's analysis of Brian's mental health impairments is supported by

substantial evidence.

### 5.  Subjective Allegations

Brian also alleges that the ALJ failed to properly assess his subjective allegations

regarding pain and fatigue and the extent of his daily activities, citing Arakas v. Commissioner,

983 F.3d 83 (4th Cir. 2020). Pl. Br. Summ. J. p. 38. Brian asserts that the ALJ improperly

discredited his statements about the severity, persistence and limiting effects of his symptoms

because the ALJ did not find them consistent with objective evidence. Id. at p. 39. Brian is

correct that objective evidence is not required to find a claimant disabled. However, that does not

require an ALJ to accept without question a claimant's complaints of disabling pain from

impairments that do not always have objective markers.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step

analysis when considering a claimant's subjective statements about impairments and

symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–

(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition

that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b),

416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms to determine the extent to which they limit the claimant's ability to work.

Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the

entire case record, including the objective medical evidence; an individual's statements about

the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required

to find the claimant disabled." Arakas, 983 F.3d at 95 (citing SSR 16-3p, 2016 WL 1119029, at

*4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through

clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire

case record and may "not disregard an individual's statements about the intensity, persistence,

and limiting effects of symptoms solely because the objective medical evidence does not

substantiate" them. Id. at *5.

Brian's effort to apply Arakas to this case is unavailing. Brian asserts that the ALJ erred

by considering lack of acute complaints and lack of abnormal findings when considering his

back pain.  Brian's back pain resulted from a previous fracture of his T6 vertebra and T4–6 disc

protrusions, which were evident in Brian's objective medical records and acknowledged and

referenced by the ALJ. See R. 24. These physical impairments are not comparable to conditions

such as fibromyalgia, that was at issue in Arakas, and that are not identified through objective

testing.

In Arakas, the plaintiff experienced pain from a condition that did not create objective

findings, and the Fourth Circuit found that the ALJ erred by relying on the absence of such

findings to discount the plaintiff's subjective statements. Here, the ALJ did not rely on the

absence of objective medical evidence. Rather, the record contains multiple treatment records

relating to Brian's back pain.  The ALJ documented the objective medical findings in his review

of the medical evidence and in his analysis. The ALJ determined that Brian's subjective

statements about the intensity of his symptoms and their effect on his ability to work were

inconsistent with the medical evidence, which included evidence that Brian was diagnosed with a thoracic spine fracture which healed; that he was treated by his family care provider with no acute complaints or abnormal findings; that he generally complained of chronic pain affecting his back between a two and eight on a pain scale of ten; that he ultimately described the pain as well controlled with Norco; and that he had an overall good functional status with daily activities, the ability to work and exercise, and limitations with prolonged standing and walking. R. 24–25.  See Walker v. Saul, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W. Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including [c]laimant's daily activities."); cf. Arakas, 983 F.3d at 97 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.").

Brian also asserts that the ALJ failed to qualify the extent to which he performed daily activities, such as driving, engaging in periods of substantial work activity and performing household chores. Pl. Br. Summ. J. p. 40.  Brian alleges that the ALJ failed to acknowledge that he has difficulty performing chores that require him to be on his feet, that he must lie down during the day, has difficulty interacting with others, difficulty concentrating and gets distracted easily. Id. at p. 41. Brian cites to Arakas v. Commissioner, and Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for the proposition that an ALJ may not consider the type of activities a claimant can perform without also considering the extent to which he can perform them. Id.

The regulations specifically provide that an ALJ may consider a claimant's daily activities, among other factors, in determining the extent to which a claimant's symptoms limit

26

his capacity for work. See 20 C.F.R. § 404.1529(c). Here, the ALJ appropriately considered

Brian's daily activities, including records reflecting his reports of overall good functional status

with daily activities, the ability to work and exercise, and some limitation of work and play due

to his physical pain. R. 26.  The ALJ did not ignore Brian's testimony that he could not stand or

sit for more than five minutes and must lay down during the day, but instead found these

reported limitations unsupported by Brian's subjective complaints to his providers, clinical

findings on exam, or physician recommendations. R. 31.  The ALJ considered Brian's activities

together with his medical evidence and the various physician opinions, as a means of evaluating

the intensity, persistence and limiting effects of Brian's symptoms.  See Arakas, 983 F.3d at 99

("In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, ALJs

may consider the claimant's daily activities.") (citing 20 C.F.R § 404.1529(c)(3)(i)). Thus, the

ALJ appropriately considered Brian's activities as one factor in determining the extent to which

symptoms affected his capacity to work. See e.g. Wooten v. Berryhill, No. 1:17-CV-190-DCK,

2018 WL 3014412, at *5 (W.D.N.C. June 15, 2018) (noting that, "[i]nstead of simply equating

an ability to perform daily activities with an ability to [work], the ALJ used evidence of

Plaintiff's daily activities as just one factor in his ultimate RFC determination"); Heyward v.

Berryhill, No. 8:16-CV-03003-JMC, 2018 WL 1417526, at *5 (D.S.C. Mar. 21, 2018) (finding

that the ALJ did not err in considering plaintiff's activities of daily living, as 20 C.F.R.

§ 404.1529(c)(3)(i) provides that "claimant's daily activities is one factor the ALJ

will consider when evaluating a claimant's symptoms, including pain").

     Brian also asserts that the ALJ erred by noting his cooperation, appropriate social skills,

and lack of observable difficulty with attention, concentration and memory during the

administrative hearing, which was held telephonically. Pl. Br. Summ. J. p. 43.  The regulations

allow an ALJ to consider his personal observations of the claimant when evaluating consistency.

SSR 16-3p, 2017 WL 5180304, at * 7 ("The adjudicator will consider any personal observations

of the individual in terms of how consistent those observations are with the individual's

statements about his or her symptoms as well as with all of the evidence in the file."). Here, the

ALJ was careful to note that he considered his observations as one of many factors in his

determination, and they were consistent with Brian's ability to tolerate the demands of basic

work activities. R. 32.  See Massey v. Astrue, No. 3:10-2943-TMC, 2012 WL 909617, at *4

(D.S.C. Mar. 16, 2012) ("As to the sit and squirm observations, the ALJ may not solely base a

credibility determination on his observations at a hearing; however, the ALJ may include

these observations in his credibility determination.")

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements

and should not interfere with that assessment where the evidence in the record supports the

ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).  Further, a

reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases

where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx.

65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ properly considered Brian's testimony regarding his pain, limitations and

daily activities. The ALJ discussed Brian's complaints regarding his physical and mental

impairments in detail.  The ALJ analyzed the medical evidence and opinion evidence, and

provided a thorough explanation as to how the RFC accommodates Brian's impairments. The

ALJ recognized Brian's allegations of limited daily activities but cited specific evidence as to

why those activities may not be as limited as alleged based upon Brian's objective examination

findings and progress notes in the record. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.) Accordingly, I conclude that the ALJ supported his analysis of Brian's subjective complaints with substantial evidence.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Brian's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 3, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge